# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES EX REL. G. WAYNE HERNDON,** | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:07CV00003 |
| | ) | **OPINION AND ORDER** |
| v. | ) ) | |
| | ) | By: James P. Jones |
| **APPALACHIAN REGIONAL** | ) | Chief United States District Judge |
| **COMMUNITY HEAD START,** | ) | |
| **INC. (NOW KIDS CENTRAL,** | ) | |
| **INC.),** | ) | |
| | ) | |
| Defendant. | ) | |

*Mark T. Hurt , Abingdon, Virginia, and Daniel R. Bieger, Copeland & Bieger, Abingdon, Virginia, for Relator G. Wayne Herndon; D. Bruce Shine and Donald F. Mason, Jr., Shine & Mason, Kingsport, Tennessee.*

In this False Claims Act case, I will deny the defendant's posttrial motions for judgment as a matter of law and for a new trial. The defendant's objection to the motion for attorneys' fees will also be denied.

I

G. Wayne Herndon commenced this action under the False Claims Act ("FCA"), 31 U.S.C.A. §§ 3729-3733 (West 2003 & Supp. 2009), against his former employer, Appalachian Regional Community Head Start, Inc., now named Kids

Central, Inc.[1]  The FCA allows for qui tam actions, such as the one here, where a private person, known as the relator, files suit on behalf of the United States against those who knowingly submit false or fraudulent claims to the government. Additionally, the FCA provides a cause of action for those who are subjected to retaliation for conduct in furtherance of an FCA claim.

In his Complaint, Herndon alleged that Kids Central had knowingly filed false claims with the U.S. Department of Health and Human Services ("HHS") and had fired him on September 12, 2003, in retaliation for his investigation of those claims. Kids Central denied any liability and the case was tried before a jury, which returned a verdict in Herndon's favor.[2]  Kids Central has now moved for judgment in its favor or for a new trial.  In addition, the parties contest the amount of attorneys' fees to be awarded to Herndon.[3]

---

[1]  For convenience, the defendant will be referred to throughout in this opinion under its new name as "Kids Central."

[2]  Prior to trial, Kids Central filed a partial motion for summary judgment as to the retaliation claim based on the statute of limitations, which was denied. *United States ex rel. Herndon v. Appalachian Reg'l Cmty. Head Start, Inc.*, 572 F. Supp. 2d 663, 664 (W.D. Va. 2008).  Kids Central then moved to dismiss the false claim case for lack of subject matter jurisdiction, which was also denied. *United States ex rel. Herndon v. Appalachian Reg'l Cmty. Head Start, Inc.*, No. 2:07CV00003, 2009 WL 249645, at *2-3 (W.D. Va. Feb. 3, 2009).

[3]  Judgment was entered on the jury's verdict on April 3, 2009.  After briefing and oral argument on the defendant's posttrial motions, the parties entered into lengthy settlement discussions and requested the court to defer decision on the posttrial motions pending those

Kids Central argues that it is entitled to judgment as a matter of law because (1) there was insufficient evidence of a false or fraudulent claim, and (2) there was insufficient evidence that Herndon engaged in activities in furtherance of a claim under the FCA. Alternatively, Kids Central contends that a new trial is warranted based on statements made to the jury by counsel for Herndon during closing argument.

The facts presented at trial showed that HHS contracted with Kids Central to operate a federally funded Head Start educational program for young children in Norton, Virginia. Herndon helped manage this program. In 2002, budget shortfalls compelled Kids Central to close its Head Start program for two weeks, which prompted an investigation by the HHS regional office in Philadelphia. HHS discovered a number of unauthorized expenditures, which were detailed in letters from HHS to Kids Central. HHS originally sought payment for $228,601 in disallowed costs, but eventually reduced that amount to $36,619, which Kids Central then paid to HHS. In 2003, Kids Central fired Herndon, after he publicly opposed a corporate restructuring plan adopted by the board of directors of Kids Central.

---

negotiations. In addition, Herndon obtained an extension of time to file his request for costs and attorneys' fees pending those negotiations. It now appears that those settlement efforts have failed and the posttrial motions are ripe for decision.

During the fiscal year ending May 31, 2002, Kids Central submitted to HHS on a quarterly basis a required financial report, called a Form 272 Federal Cash Transaction Report ("FCTR"). The form required Kids Central to disclose all of the disbursements that it had made to date during the fiscal year and to certify that the disbursements had "been made for the purpose and conditions of the grant or agreement." Included in the FCTRs were disbursements made for an employee retreat at the resort town of Pigeon Forge, Tennessee, and for a beautification project at a Kids Central facility. Herndon offered testimony from current and former Kids Central employees to demonstrate that these expenses were extravagant and unrelated to the mission of the Head Start program.

To support his retaliation claim, Herndon testified about his activities in connection with the HHS investigation of Kids Central. He also called Bill Bowen, the former executive director of Kids Central. Bowen was primarily responsible for firing Herndon. His contemporaneous notes indicated that he had become suspicious of Herndon's communication with HHS, but in a letter to Herndon claimed that Herndon's opposition to the restructuring plan was the reason he was being fired.

In its defense, Kids Central offered the testimony of James Bolling, who, as a former administrative director at Kids Central, often signed the FCTRs. Members of

the personnel committee at Kids Central and a consultant employed by Kids Central

also testified in regard to the corporate restructuring plan and Herndon's firing.

After hearing three days of evidence, the jury found in favor of Herndon on

both the false claims count and the retaliation count.[4]

## II

## A

I find that there was adequate evidence to support the jury's verdict that Kids

Central filed a false or fraudulent claim within the meaning of the FCA.

The jury's award of $35,169 on the false claim count represented the cost of

the employee retreat held by Kids Central in July of 2001, planned and directed by

Bill Bowen, the head of the agency. Following its investigation of Kids Central, HHS

criticized this expenditure of federal funds as follows:

---

[4] The jury determined that as a result of the defendant's false claims, the United States had suffered $35,169 in damages, and that as a result of his firing, Herndon lost $49,000 in back pay. Pursuant to the FCA, the jury award in favor of the United States was trebled, the amount previously paid by Kids Central was deducted, and a statutory civil penalty of $5,000 was added, for a total judgment in favor of the United States of $75,338. Thirty percent of this amount was designated to Herndon, in accord with the FCA. Also in accord with the FCA, the back pay award was doubled and judgment was entered in favor of Herndon in the amount of $98,000. No objection has been made to the calculation of any of these amounts.

The agenda for this affair included no training sessions, and was not relevant to Head Start. Records showed Head Start subsidized the cost of rooms, meals and incidental expenses for the families of Board members, staff and invited guests. The agency had no evidence that the cost of this activity was necessary to meet the objectives of the grant for which [Kids Central] was awarded funding. Furthermore, no information was available to show this retreat benefitted Head Start or the participants of the Head Start program.

(Pl.'s Ex. 2.) Testimony from persons who attended the retreat corroborated these findings. While Kids Central attempted to dispute the characterization of the retreat as simply an all-expenses-paid vacation for employees and their families, the jury was clearly justified in believing that this expenditure was not made consistent with the purpose and conditions of the grant from HHS.

Kids Central argues in its motion for judgment as a matter of law that Herndon's proof failed because there was no evidence that Kids Central knowing lied when it submitted to HHS its application for funds and proposed budget for the fiscal year in which the retreat occurred. The retreat was proposed in that budget at a cost of $10,000.[5] Kids Central contends that since it identified the retreat and its estimated cost, it cannot be held liable for making a false claim. I disagree.

_____

[5] Specially, Kids Central advised HHS that "[t]he agency has utilized the small resort towns of Pigeon Forge and Gatlinburg, TN as the backdrop for the annual retreat the past three summers and is again planning to hold the retreat in this area. [Kids Central] has allocated $10,000 of the available T/TA funds to support this July's retreat." (Ex. 7, FY2001 Supplemental Fund Application 8.)

Even though the FCTRs submitted by Kids Central were not direct requests for payment, they were capable of being false claims within the meaning of the FCA, since "their practical purpose . . . was to induce and assure future disbursements." *United States v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 178-79 (D. Mass. 2004). The jury was clearly justified in believing that the expenditures for the retreat violated the purpose and conditions of the Head Start grant from HHS and that the certification otherwise was knowingly or recklessly false. Moreover, there was evidence from Lisa Barton, the chief financial officer of Kids Central, that during this period of time Kids Central routinely spent money contrary to the budget and in violation of accounting principles.

For these reasons, Kids Central is not entitled to judgment as a matter of law as to the award in favor of the United States.

## B

Kids Central also contends that the evidence was insufficient as matter of law as to the retaliation claim. However, I find that this argument is procedurally barred because it was not raised before the case was submitted to the jury, as required by Federal Rule of Civil Procedure 50(a).

Before the case was submitted to the jury, counsel for Kids Central moved as follows:

MR. SHINE:  Your Honor, comes now the defendant, pursuant to Rule 50, Federal Rules of Civil Procedure, and moves for judgment as matter of law on the basis that this case involves two issues: One, False Claims Act; two, retaliation under the False Claims Act.

As to the False Claims Act, there is a requirement that there be a showing of fraud, a knowing and willful act of filing a fraudulent claim in order to obtain funds from the federal government.

And its clear at this point there has been absolutely no evidence of any fraudulent claim.  As Your Honor amply stated before the luncheon break, procedures may have been not followed in one or two instances, but there's no showing here of any fraud. And that's an absolute essential element in the False Claims Act.

(Trial Tr. 2, Mar. 31, 2009.)  Counsel went on to discuss the alleged deficiencies in

Herndon's proof as to the false claim, but never again mentioned the retaliation claim

or any evidence pertaining to it.[6]

A party who neglects to raise an issue in a pre-verdict Rule 50(a) motion

waives the opportunity to include that issue in a post-verdict motion.  *See Fed. Sav.*

*& Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137-38 (4th Cir. 1987).  The Advisory

Committee Note makes this clear: "Because the Rule 50(b) motion is only a renewal

---

[6] Following the verdict and entry of judgment,  Kids Central filed a timely motion under Federal Rule of Civil Procedure 50(b), seeking judgment as a matter of law. In its motion, the retaliation claim was again not mentioned, but in two pages of its 24-page memorandum filed in support of the motion, Kids Central argued that the evidence was insufficient to support the verdict on the retaliation claim.  Kids Central later filed a motion seeking leave to amend its motion for judgment as a matter of law in order to add the retaliation claim issue.  In view of my ruling, that motion will be denied as futile, since even if granted, it would make no difference in the outcome.

of the pre-verdict motion, it can be granted only on grounds advanced in the pre-verdict motion." Fed. R. Civ. P. advisory committee note.

Part of the rationale for this rule stems from the Seventh Amendment's right to a trial by jury. *See Benson v. Allphin*, 786 F.2d 268, 273 (7th Cir. 1986) (stating that "a final judgment that is contrary to the jury's verdict might run afoul of the Seventh Amendment unless it is considered a reserved decision on an earlier motion for directed verdict.") Practical reasons justify the rule as well. A pre-verdict motion notifies an opponent of the flaws in the sufficiency of the evidence, allows the opponent to cure any defects, and presents the court an opportunity to resolve some or all of the issues in the case before the jury retires to deliberate. *See id.* at 273-74; Fed. R. Civ. P. advisory committee note.

Prior to 2006, Rule 50 required a motion for judgment to be made at an express time—the close of all of the evidence—as a precondition to a Rule 50(b) post-verdict motion. The strictness of that requirement produced a forgiving attitude towards failures to comply. *See Singer v. Dungan*, 45 F.3d 823, 828-29 (4th Cir. 1995); Fed. R. Civ. P. advisory committee notes. However, the Rule now only requires a motion "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). The prior reason for indulgence no longer exists.

Kid's Central's pre-verdict motion failed to raise the issue that it now seeks to assert as to the retaliation claim and for that reason, it must be denied.

C

Finally, Kids Central moves for a new trial on the basis of a portion of plaintiff's counsel's closing argument.

Prior to trial, the court granted the plaintiff Herndon's Motion in Limine to exclude any mention or evidence by Kid's Central of the fact that Kid's Central had repaid to HHS prior to suit the $35,169 cost of the retreat, unless it otherwise became relevant. Immediately prior to trial, the court reminded counsel of this ruling:

> THE COURT: . . . I want to remind counsel of my rulings at pretrial conference last week. In particular, I did grant the plaintiff's motion in limine concerning the argument the plaintiff wished to exclude, except that I did reserve final ruling on any mention to the jury or introduction of evidence of the prior repayment by the defendant to the Government on condition that there be no mention of that fact, evidence of that fact until and unless I have ruled on that issue. So, counsel needs to be careful that no mention is made of repayment in opening statements, or thereafter, until and unless I expressly allow it.
>
> The procedure will be that if counsel for the defendant does wish to mention that fact, or introduce evidence of that fact, then counsel must affirmatively bring that to my attention, and outside of the presence of the jury. And if I find that there has been a sufficient evidentiary showing at that point of the relevance of that information, and the fact that it outweighs any prejudicial effect, then I may rule that it is admissible.

(Trial Tr. 2, Mar. 30, 2009.)

Consistent with this ruling, no evidence of the payment by Kid's Central was introduced, or mentioned, during the trial. However, toward the end of final closing argument, counsel for Herndon stated to the jury as follows:

> Exhibit three did not resolve the $35,000.[7] That's what you're here for today. To resolve that. Let's put it to bed. Let's recover the money for the government that was clearly misspent. They lied about it, and the Government is entitled to those damages.

(Trial Tr. 4, Apr. 2, 2009.) No objection was made to those remarks. During jury deliberations, the jury foreperson sent a note to the court, which read as follows:

> We are confused on one issue. Has Kids Central already paid back the $35,169 to the Department of Health and Human Services? If the answer is yes, then what is Mr. Hurt, the plaintiff's lawyer, referring to when he says we can get money back for the government?

(Trial Tr. 2, Apr. 2, 2009.) After consulting with counsel, the court sent the jury the following written instruction:

> Thank you for your written note. Please read this reply to the jury. You should not concern yourself whether or not any money has previously been paid back. If you find in favor of the plaintiff on the False Claims Act case and award damages, the court will allow credit for any amounts determined to have been paid back.

(*Id.*)[8]

---

[7] Plaintiff's Exhibit 3 was a letter dated March 12, 2003, from HHS to Kids Central disallowing the expenditure for the retreat and requesting repayment.

[8] Plaintiff's counsel agreed with the court's response. Defense counsel suggested only that the last sentence of the reply be changed to, "If you find in favor of the plaintiff,

While it was a mistake for counsel for Herndon to intimate that the government had not been repaid the amount of the retreat, the court's instruction cured any possible prejudice. Even had the defendant objected to counsel's statement, the result would have been an instruction similar in form to that which was given in reply to the jury's message.[9] Accordingly, there is no basis for a new trial on this ground.

III

Under the FCA, Herndon, as the prevailing party, is entitled to an award of attorneys' fees and costs. 31 U.S.C.A. § 3730(d)(2), (h). As the Fourth Circuit has noted in another FCA case, in calculating an appropriate award, the court "must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson/Barber* factors." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356-57 (4th Cir. 2009) (referring to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)).

---

the court will credit the amount paid back by Kids Central," (Trial Tr. 4, Apr. 2, 2009), which request the court declined to follow.

[9] Defense counsel could have objected and requested argument on the objection out of the presence of the jury, which they did not.

Herndon has filed a motion seeking such an award, with supporting declarations and time records. The defendant has responded and expressly does not object to either the number of hours claimed by Herndon's attorneys Hurt and Bieger or their hourly rate of $235. The defendant does object to the inclusion of any time expended by Hurt's legal assistant.

I will overrule the defendant's objection. Paralegal time is properly recoverable. *See Richlin Sec. Serv. Co. v. Chertoff*, 128 S. Ct. 2007, 2015 (2008) (holding that the statutory term "attorney's fee" in the Equal Access to Justice Act includes fees for paralegal services). Based upon the time records, and considering the *Johnson*/*Barber* factors, the time incurred by this paralegal was reasonable in relation to the nature and complexity of this case. Herndon requests an hourly rate for the paralegal of $102, which is a prevailing market rate for this geographical area, *see Rivers v. Ledford*, No. 4:09-CV-5-BO, 2009 WL 3459227, at *5 (E.D.N.C. Oct. 24, 2009), although it is below her current billing rate of $145.

Accordingly, I will overrule the defendant's objection and grant the award of attorneys' fees and costs as requested.[10]

---

[10] Even though the defendant's objection was limited to the paralegal component, I have independently examined the entire request, and find, in accord with the *Johnson*/*Barber* factors, that it is reasonable, particularly taking into account the difficulty of the issues raised, the skill required, and the result obtained.

IV

For the reasons stated, it is **ORDERED** as follows:

1.   Defendant's Motion for Judgment After Trial Pursuant to FRCP 50(b) Or a New Trial Pursuant to FRCP 59(a) is DENIED;

2.   Defendant's Motion to Amend Its Rule 50(b) Motion is DENIED; and

3.   Relator's Amended Application for Attorney Fees and Costs is GRANTED and G. Wayne Herndon is awarded attorneys' fees and costs in the total amount of $85,709.83, to be paid by Kids Central, Inc., in addition to the judgment previously awarded and in addition to the costs previously taxed by the clerk in this case.

ENTER: December 16, 2009

/s/ JAMES P. JONES
Chief United States District Judge